Andy DOUBET and Jeannie D. Doubet, Plaintiffs,

v.

USA FINANCIAL SERVICES, INC., f/k/a Heights Finance Corporation, Defendant.

No. 86–1328.

United States District Court, C.D. Illinois.

Sept. 8, 1987.

Barry M. Barash, Galesburg, Ill., for plaintiffs.

Kevin D. Schneider, Westervelt Johnson Nicoll & Keller, Peoria, Ill., for defendant.

## ORDER

MIHM, District Judge.

The Plaintiffs, Andy Doubet and Jeannie Doubet, have brought this action against Defendant, USA Financial Services, Inc., seeking damages under a financing arrangement because of alleged violations of the Federal Truth in Lending Act (TILA), 15 U.S.C. § 1638(a)(9). This case is presently before the Court upon the Cross–Motions for Summary Judgment, which Motions have been briefed and orally argued before this Court. As indicated at oral argument, the Court orders that Defendant's Motion for Summary Judgment is GRANTED on the issue of the bona fide error defense and the Plaintiffs' Motion for Summary Judgment is GRANTED on the "tracking" violation alleged in Count I.

On February 12, 1986, the Plaintiffs borrowed $1,316.65 from the Defendant, which loan was documented by a Federal Disclosure Statement and a Note and Security Agreement (Plaintiffs' Exhibits 1–A and 1–B). On January 23, the Plaintiffs borrowed $680.74 from the Defendant. This loan is evidenced by a Federal Disclosure Statement and a Note and Security Agreement (Plaintiffs' Exhibits 2–A and 2–B). The alleged violations of the TILA for these loans are detailed in Counts I and II, respectively.

Count III of the Complaint makes certain allegations regarding a loan made by the Defendant to the Plaintiffs on April 9, 1985, and Count IV refers to a loan on September 6, 1984. These two counts allege violations of the Illinois Consumer Installment Loan Act (CILA), Ill.Rev.Stat., 1985, ch. 17, ¶¶ 5401 et seq., while the first two counts allege violations of both the Federal Truth in Lending Act and the Illinois Consumer Installment Loan Act.

Prior to deciding the Cross–Motions for Summary Judgment, this Court heard arguments and issued an oral ruling on the Defendant's Motion to Dismiss. In its Motion to Dismiss, the Defendant argued that prior to filing this Complaint, the Plaintiffs had filed a Petition for Relief under Chapter 7 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of Illinois, *In re Doubet,* Case No. 86–82849. The Defendant argues that the alleged causes of action contained in this Complaint vested in the bankruptcy trustee on the date Plaintiffs filed their petition in bankruptcy, and that the Plaintiffs lack standing to sue on these claims because the bankruptcy trustee had not abandoned those claims. The Defendant also argued that this Court was without subject matter jurisdiction to decide the claims alleged in this Complaint because Plaintiffs, by filing for bankruptcy, had invoked the summary jurisdiction of the United States Bankruptcy Court for the Central District of Illinois. Finally, the Defendant argued that Counts I and II of

the Complaint violated the Federal Rules of Civil Procedure, Rules 8 and 10, in that they contained two separate and distinct claims within the same counts and that any claims based upon the Consumer Installment Loan Act should be dismissed because there is no implied private right of action under that Act.

The Court has already considered the first of these two issues in the case of *Christy v. Heights Finance Corp.*, 101 B.R. 542 (C.D.Ill.1987). The Court in *Christy* concluded that the debtors did not lack standing to sue and the Court was not without subject matter jurisdiction because they had claimed the causes of action as exempt property in the bankruptcy proceeding. The Plaintiffs established to the Court's satisfaction that they claimed as exempt the causes of action against USA Financial Services in the bankruptcy proceeding, and that neither the trustee nor any creditors had objected to those claims of exemptions in a timely fashion. Therefore, under the Court's decision in *Christy v. Heights Finance Corp.*, the Court DENIES the Motion to Dismiss on these grounds. The Court also finds that Counts I and II of the Complaint do not violate Rules 8 and 10 of the Federal Rules of Civil Procedure, and, therefore, DENIES the Motion to Dismiss on that ground.

■ The Court, however, finds that the Plaintiffs have failed to state a cause of action in Counts III and IV of their Complaint and in those portions of Counts I and II based upon the Consumer Installment Loan Act, Ill.Rev.Stat., ch. 17, ¶ 5420. The Court holds that CILA does not include a private right of action for violations of the disclosure provisions, because when the Act was amended on January 1, 1984 by PA 83–657, the amendment specifically excluded a cause of action founded upon improper disclosure under ¶ 5420 of Ill.Rev. Stat., ch. 17. Ill.Rev.Stat., ch. 17, ¶ 5426(b). Because the Illinois legislature expressly removed the cause of action which had previously existed for improper disclosures, the Court finds, under the analysis in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed. 2d 26 (1975), that no express or implied

private right of action exists under the present version of the Consumer Installment Loan Act. The Court orders that the Defendant's Motion to Dismiss Counts III and IV and those portions of Counts I and II based upon CILA is GRANTED.

These previously announced decisions of the Count, formalized in this written opinion, leave pending in this case only those portions of Counts I and II of the Complaint which are based upon alleged violations of the Federal Truth in Lending Act. In their Motion for Summary Judgment, the Plaintiffs argued that summary judgment should be granted in favor of the Plaintiffs on Count I of the Complaint. In reviewing the arguments raised by the Plaintiffs and Defendant in these summary judgment motions, it became clear to the Court that the same arguments which the Plaintiffs were asserting as to Count I also applied to a Motion for Summary Judgment on Count II of the Complaint. At oral argument the Court indicated to the parties that it would read Plaintiffs' Motion for Summary Judgment as if it were requesting summary judgment on both Counts I and II of the Complaint, even though it only specifically mentions Count I. Because of the similarity in the documents used in these loan transactions of February and January of 1986, the rulings of this Court apply to the Truth in Lending Act claims in both Counts I and II of the Complaint where appropriate.

■ The first issue raised by the Plaintiffs which they feel is appropriate for summary judgment is their allegation that the annual percentage rate is disclosed as "None" on Plaintiffs' Exhibit 1–A, which, they claim, violates 15 U.S.C. § 1638(a), Regulation Z, § 226.8(b). (Count I, 5a.) (This claim is not made with regard to Count II of the Complaint). The Defendant argues that it is entitled to summary judgment on this portion of Count I, based upon the bona fide error defense of 15 U.S.C. § 1640(c) and this Court's prior ruling in *Gilstrap v. Heights Finance Corporation*, 85–1385, 1986 WL 27587 (C.D.Ill., Aug. 28, 1986).

In support of this argument, the Defendant has submitted the affidavit of John

Smith, the branch manager for USA Financial, who testified that USA Financial uses a DMC 2100 computer to print the loan sets, that the loan sets are reviewed by USA Financial's employees prior to the loan closing, and that they were reviewed again with the Plaintiffs at the loan closing. The Defendant also submitted an affidavit of Donna Young, the assistant branch manager for USA Financial Services in Canton, Illinois, who testified that she personally prepared or oversaw the preparation of the Federal Disclosure Statement with regard to the loan on February 12, 1986 and that she reviewed the Federal Disclosure Statement prior to the loan closing and at the time of the loan closing with the Plaintiffs. The Defendant suggests that this evidence supports the conclusion that the misprint was the result of a slipped carbon in the printing computer and that it is entitled to the protection of the bona fide error defense.

In *Gilstrap*, this Court was presented with a similar situation and found that a reviewing procedure which includes both an initial review and a double check of the first review satisfied the statutory provisions of 15 U.S.C. § 1640(c) and the test established by the Seventh Circuit in *Mirabal v. General Motors Acceptance Corporation*, 537 F.2d 871 (7th Cir.1976). The defendant in *Gilstrap* was the predecessor corporation to the Defendant in the present case, and the Court's discussion of the procedures used by the defendant in *Gilstrap* appear to be the same procedures which were in place at the time of the loans to the Doubets. Therefore, the Court holds that summary judgment on the issue of bona fide error defense is GRANTED in favor of the Defendant, USA Financial Services, Inc. However, the Court believes it is appropriate to note that the Defendant should not expect to rely upon this "slipped carbon" defense *ad infinitum*, because at some point in time they should restructure their review procedures if too many cases arise in which it appears that printing errors have been caused by a slipped carbon.

■ Deciding the bona fide error issue in favor of the Defendant, however, does not dispose of the Plaintiffs' claims in their entirety, because in both Counts I and II, the Plaintiffs allege that the Defendant violated 15 U.S.C. § 1638(a)(9) due to the different wording used in the Federal Disclosure Statement and the Security Agreement in describing the Defendant's security interest. Specifically, the Plaintiffs point out that the Federal Disclosure Statements (Exhibits 1–A and 2–A) state that the Plaintiffs are giving a security interest in a Quazar 25 inch color console television, Quazar VCR, McDonald receiver, Soundtech tape player, Soundtech speakers, 22 inch push lawnmower, and 1981 homemade flat bed trailer (the reference to the flat bed trailer does not appear on Plaintiffs' Exhibit 2–A). However, the Note and Security Agreements (Plaintiffs' Exhibit 1–B and 2–B) have a box checked which indicates that the security interest extends to collateral described as:

> "Consumer goods now owned or hereafter acquired within 10 days of the date of this loan or any future loan, by the Borrower(s) in replacement of such consumer goods (and proceeds) now or hereafter located in or about the residence of the Borrower(s) above set forth including those items described on Schedule A, if such Schedule A is attached hereto, together with such non-consumer goods as described on Schedule A."

The Plaintiffs argue that these disclosures are a violation of TILA because the Security Agreement, with its reference to "consumer goods" is clearly broader than the security interest which is disclosed on the Federal Disclosure Statement.

In response, the Defendant argues that the case law requiring a disclosure statement accurately "track" the Security Agreement were decided under the old Regulation Z, which required disclosure in a "meaningful sequence" using "clear and conspicuous" language. Defendant suggests that because Regulation Z has been changed, these cases are no longer applicable law and the Defendant has sufficiently complied with the disclosure requirements under the present version of the TILA and its relevant regulations. In addition, the

Defendant argues that the Court should construe the provision of the Security Agreement as an after-acquired property clause that is not required to be disclosed under Regulation Z of the TILA.

The statutory provisions which the Plaintiffs allege the Defendant violated are found at 15 U.S.C. § 1638(a)(9). That section reads:

"For each consumer credit transaction other than an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable: ... (9) where the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type....

Form and timing of disclosures ...

(b)(1) ... Except as otherwise provided in this part, the disclosures required under subsection (a) of this section shall be made before the credit is extended. Except for the disclosures required by subsection (a)(1) of this section, all disclosures required under subsection (a) of this section and any disclosure provided for in subsection (b), (c), or (d) of section 1605 of this title shall be conspicuously segregated from all other terms, data, or information provided in connection with the transaction, including any computations or itemization."

The relevant regulations state, at 12 C.F. R. § 226.18(m):

"For each transaction, the creditor shall disclose the following information as applicable:

(M) *Security Interest.* The fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction or in other property identified by item or type."

Regulation 12 C.F.R. § 226.17 reads:

"General Disclosure Requirements.

(a) Form of Disclosures. (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosure shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under section 226.-18. The itemization of the amount financed under section 226.18(c)(1) must be separate from the other disclosure under that section." (Footnotes omitted).

Defendant's arguments notwithstanding, this Court believes that the "tracking" issue in this case is controlled by the Seventh Circuit's decision in *Bulger v. Thorp Credit, Inc., of Illinois,* 609 F.2d 1255 (7th Cir.1979). In *Bulger,* the Seventh Circuit interpreted a section of the TILA, 15 U.S.C. § 1638(a)(8) and the corresponding section of Regulation Z, 12 C.F.R. § 226.8(b)(5), which required that a creditor disclose a description of any security interest held or to be retained or acquired by the creditor in connection with the loan, and a clear identification of the property to which the security interest relates. The district court found that the disclosure statement revealed a security interest in household goods, appliances, furniture, and all unearned credit insurance premiums, including after acquired property, but did not reveal, as did the security agreement, a security interest in boats and recreational vehicles located at the debtor's premises. The Seventh Circuit affirmed the decision of the district court, which held that even though the plaintiff did not hold an enforceable security interest in any boats or recreational vehicles at the time the disclosure statements were issued, any interest the debtors would have acquired in a boat or recreational vehicle after the date of the agreement would have been subject to a security interest in favor of Thorp. The court concluded, "This potential interest in collateral is a security interest 'to be retained or acquired' within the meaning of the Act and therefore had to be disclosed." *Id.* at 1258. The court concluded:

"Section 1629(a)(8) was designed to require a creditor to clearly disclose the full extent of the security interest retained. Thorp did reserve a security interest in any boats or recreational vehicles acquired by the debtor within 10

days after the agreement. As insubstantial as that interest may seem, the debtor was entitled to be apprised of it. Failure to do so was a violation of the Act." *Id.* The court added that ample space existed on the disclosure statement for inclusion of the phrase "boats and recreational vehicles," so that the reference on the disclosure statement to the security agreement did not satisfy the obligation of the creditor to make complete disclosure on one side of the document pursuant to Regulation Z.

The Court believes that this analysis is appropriate to the facts of the present case, even though the TILA has been amended since the Seventh Circuit's decision in *Bulger*. The most recent version of the statute requires that the creditor give the borrower a statement which indicates that a security interest has been taken in property not purchased as part of the credit transaction identified by item or type. As did the *Bulger* Court, this Court believes that this section was designed to require a creditor to disclose the full extent of the security interest retained (or to be acquired) by the creditor.

The documents involved in the loan transactions in dispute before the Court, however, show that the creditor failed to disclose the full extent of the security interest which it had obtained as part of the credit transaction. While the Federal Disclosure Statement lists a number of specific items of the Plaintiffs in which the creditor was obtaining a security interest, the Note and Security Agreements state that the Security Agreement covered "consumer goods now owned or hereafter acquired within 10 days of this loan. . . ." This description on the Note and Security Agreement is clearly a much broader description than that contained in the Federal Disclosure Statement.

If the creditor had intended to take a security interest in only those items described in the Federal Disclosure Statement, then that should have been made clear on the Note and Security Agreement. *See, Teel v. Thorp Credit, Inc., of Illinois,* 609 F.2d 1268 (7th Cir.1979) (defendant argued that it had obtained a security interest in only the items listed on the disclosure statement and the broader language in the security agreement which granted a security interest in all household goods was the result of the defendant's employees' failure to properly "x-out" the inapplicable, broader language of the security agreement; Court held that the actions of the defendant did not satisfy the terms of § 1640(c) and the defendant was not entitled to the bona fide error defense). Reading these two documents together, one must conclude the Note and Security Agreement describes a much broader security interest than that stated on the Federal Disclosure Statement, which means that the Federal Disclosure Statement does not accurately (even in a summary fashion) describe the extent of the creditor's security interest. This is a violation of the TILA, and the Plaintiffs are entitled to summary judgment on the TILA claims of Counts I and II.

■ The Defendant has suggested that the Note and Security Agreement does not grant a broader security interest than is disclosed in the Federal Disclosure Statement, because the language from the Note and Security Agreement quoted by the Court must be construed as an after-acquired property clause, which need not be disclosed under the TILA and its regulations. Comment 18(m)–4 of the official staff commentary under Regulation Z provides that an after-acquired property clause is not a security interest to be disclosed under § 226.18(m), but this does not end the Court's analysis. The language from the Note and Security Agreement which was checked by the creditor reads: "Consumer goods *now owned* or hereafter acquired within 10 days of the date of this loan . . ." (emphasis added). Giving meaning to all of the words used in that phrase, the Court finds that this language is not an after-acquired property clause; even though it does indicate that a security interest would be taken in after-acquired property, the language also makes clear that the security interest extends to consumer goods *now owned.* Only a very strained interpretation of this provision

could result in the conclusion that this was nothing more than an after-acquired property clause, and the Court finds that this provision grants a security interest in the Plaintiffs' consumer goods which is much broader than that described in the Federal Disclosure Statement.

Because the Court finds that the Defendant has violated the disclosure requirements of the TILA by not disclosing the entire security interest on the Federal Disclosure Statement, the Court need not decide the question of whether the Plaintiffs received the Schedule A described in the Note and Security Agreements and the impact of that reference to Schedule A.

In addition, the Plaintiffs' arguments that the required disclosures were not made "clearly, conspicuously, [and] in meaningful sequence ..." is another way for the Plaintiffs to argue that the language of the Federal Disclosure Statement did not "track" the security interest described in the Note and Security Agreement. The law allows only a single recovery for every loan transaction, with the statutory damage amount being either twice the amount of the finance charge or $1,000, whichever is less. 15 U.S.C. § 1640(a)(2)(A)(i). Because only a single recovery is permitted for every loan transaction, and the Court has already found violation, in the two loan transactions involved, the Court need not decide whether the Defendant also violated the "clear and conspicuous" requirement of the statute. In addition to damages, Section 1640(a)(3) allows a successful plaintiff to recover from the creditor/defendant the costs of the action and a reasonable attorney's fee.

Therefore, the Court orders that the Plaintiffs' Motion for Summary Judgment is GRANTED on the tracking issue but DENIED on the bona fide error issue; the Defendant's Motion for Summary Judgment is GRANTED on the bona fide error issue, but DENIED on the tracking issue. The Court directs the Clerk to enter judgment for the Plaintiffs in the amount of $1,000 on Count I because $1,000 is less than twice the finance charge of $776.07 for this loan. The Court directs the Clerk to enter judgment for the Plaintiffs in the amount of $588.52 on Count II, which represents twice the amount of the finance charge ($294.26) on the loan in Count II. The Court directs counsel for the Plaintiffs to file, within 14 days, affidavits documenting the costs and fees sought, and the Court allows the Defendant 14 days thereafter to respond to the Plaintiffs' statement of fees and costs.

It is so ordered.